IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH E. M., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:23-cv-866 |
| | ) Magistrate Judge Jeannice W. Appenteng |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joseph E. M. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After review of the record and the parties' respective arguments, the Court grants the Commissioner's motion.

**BACKGROUND**

Plaintiff protectively applied for DIB benefits on April 9, 2021 alleging disability since April 1, 2020 due to Type 2 diabetes, diabetic nerve pain, high blood pressure, numbness and tingling in both legs and feet, rapid weight loss, and no appetite. Administrative Record ("R.") 229-30, 266. He subsequently amended the alleged onset date to February 20, 2021. R. 17, 48-49. Born in July 1972, plaintiff was 48 years old as of the amended onset date, making him a younger person

(under age 50). 20 C.F.R. § 404.1563(c); R. 229. He obtained a GED and lives with his wife, young daughter, and mother. R. 58, 60, 267. Between 1997 and 2021, plaintiff worked as a bread maker, a limousine driver, and a construction worker. R. 61, 267. He stopped working in February 2021 due to his conditions and has not engaged in substantial gainful activity since that date. R. 266.

The Social Security Administration denied plaintiff's application initially on July 30, 2021, and upon reconsideration on January 20, 2022. R. 83-114. Plaintiff filed a timely request for a hearing and on May 18, 2022, he appeared before an administrative law judge ("ALJ"). R. 37. The ALJ heard testimony from plaintiff, who was represented by counsel, and from vocational expert James Breen (the "VE").[1] R. 39-82. On August 9, 2022, the ALJ found that plaintiff's diabetes mellitus with peripheral neuropathy is a severe impairment, but that it does not alone or in combination with plaintiff's non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 20-21.

After reviewing the evidence, the ALJ concluded that plaintiff has the RFC to perform light work with certain postural, exertional, manipulative, and environmental restrictions. R. 21-29. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past work as a limousine driver, but could perform a significant number of other jobs available in the national economy. R. 29-31. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through

---

[1] The hearing was held telephonically due to the COVID-19 pandemic.

the date of the decision. R. 31. The Appeals Council denied plaintiff's request for review on January 18, 2023. R. 1-5. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ made a flawed RFC determination and erred in discrediting his subjective statements regarding his symptoms.[2] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

**A.     Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is

---

[2] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

3

severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

B.  Analysis

1.  Physical RFC

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in assessing his physical RFC. Dkt. 13 at 12-15; Dkt. 24 at 2-5. A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ found that plaintiff can perform light work involving: occasional lifting and/or carrying of up to 20 pounds; frequent lifting and/or carrying of 10 pounds; occasional stooping, kneeling, balancing, crouching, and crawling; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no driving at work or operating moving machinery; no working at unprotected heights; and no concentrated exposure to unguarded hazardous machinery. R. 21. Plaintiff is able to sit, stand, and walk for about six hours in an eight-hour workday but must be able to sit for up to five minutes after standing and/or walking for an hour. R. 21, 24. In addition, plaintiff needs to use a single-point cane at all times while walking, though he does not require a cane for standing. R. 21. Finally, plaintiff can perform frequent but not constant handling and fingering. *Id.*

5

Plaintiff objects to the sit-stand option, arguing that it is inadequate to address his near complete inability to change positions without assistance, and his struggles with poor mobility, pain, and fatigue. Dkt. 13 at 12-13. Plaintiff also insists that he is incapable of frequent handling and fingering due to his neuropathy and carpal tunnel syndrome. Dkt. 13 at 13-15. Both of these arguments fail because no physician of record found plaintiff more limited than the ALJ. On January 19, 2022, state agency reviewer Vidya Madala, M.D., determined that plaintiff can sit, stand, and walk for about six hours in an eight-hour workday and has no manipulative limitations. R. 111-12. Shortly thereafter on March 18, 2022, treating neurologist Wei He, M.D., noted that plaintiff has sensory changes, polyneuropathy in his left arm and leg, and severe left carpal tunnel syndrome, but also opined that plaintiff's symptoms "can be controlled with medications." R. 1246. Dr. He did not impose any manipulative or exertional limitations, which were not documented in the medical record. R. 1247-49.

The ALJ found these opinions generally persuasive but imposed the additional sit-stand option and handling/fingering restrictions to address plaintiff's complaints of foot/lower extremity pain and numbness, numbness in the fingers, and left carpal tunnel syndrome. R. 27-29. Plaintiff does not challenge the ALJ's assessment of the opinion evidence or identify any physician who found him more limited. As the Seventh Circuit has stated, "[t]he lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for [the Court] to find that the ALJ misjudged the evidence so

6

significantly as to warrant reversal." *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023).

Plaintiff points to a variety of subjective evidence he believes supports greater limitations. For example, he stresses his own testimony that when he shops in a grocery store he can only use a cane to walk for ten minutes before needing to switch to a scooter, Dkt. 13 at 12 (citing R. 50-51); he drops items and can only hold a pencil for ten minutes, *Id*. at 14 (citing R. 54-55); and he has hand pain radiating up his arm. *Id*. Plaintiff also cites to physical therapy records from December 30, 2021 documenting his subjective complaints of difficulty walking, using stairs, opening jars/bottles, performing car and floor transfers, walking over uneven surfaces, standing up from a couch, picking up his daughter, carrying objects, and walking up/down a ramp. *Id*. at 12, 14 (citing R. 720). Finally, plaintiff points to his December 30, 2021 Basic Mobility Outpatient Short Form where he reported being unable to take a brisk one-mile walk, run a short distance, carry something while climbing stairs, or take part in strenuous activities. *Id*. at 12 (citing R. 728).

The ALJ discussed all of this evidence but reasonably accepted the uncontroverted medical opinions that plaintiff remains capable of a reduced range of light work. R. 22-29. Indeed, "[i]t was because of and not in spite of [plaintiff's] testimony that the ALJ limited h[im] to a more restrictive residual functional capacity finding than any physician on the record." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). Plaintiff takes issue with the ALJ's additional observations that he is able to use his hands to feed his daughter, change diapers, shop for groceries,

7

manipulate and use a phone, and grasp and use a cane. R. 27. Contrary to plaintiff's assertion, however, the ALJ did not equate his ability to engage in these activities with an ability to work full time. The ALJ simply noted that plaintiff was able to engage in more robust activities than would be expected for a person with his claimed limitations, which was entirely proper. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("ALJ did not equate Burmester's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules").

There is likewise no merit to plaintiff's objection that the ALJ committed reversible error by failing to address the effects of his carpal tunnel syndrome. Dkt. 13 at 14. The ALJ expressly discussed the January 2022 EMG test revealing severe carpal tunnel syndrome, as well as Dr. He's recommendation that plaintiff wear wrist braces at night. R. 26. As, noted, however, Dr. He did not impose any manipulative limitations, R. 1249, and the ALJ reasonably relied on that assessment.

Viewing the record as a whole, the ALJ's determination that plaintiff is capable of a reduced range of light work is supported by substantial evidence. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (courts "apply a very deferential standard of review to the ALJ's decision"); *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (substantial evidence is "not a high threshold"). "Although

8

plaintiff may disagree with how the ALJ weighed the evidence and the conclusions the ALJ drew from that evidence, this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 C 50290, 2024 WL 4347193, at *2 (N.D. Ill. Sept. 30, 2024) (quoting *Gedatus*, 994 F.3d at 900). Plaintiff's request to remand the case for further consideration of the sit-stand option and the restriction to frequent handling and fingering is denied.

### 2. Subjective Symptom Evaluation

Plaintiff also argues that the ALJ erred in assessing his subjective statements regarding his symptoms. Dkt. 13 at 8-11; Dkt. 18 at 3. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn

9

a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

The ALJ discussed plaintiff's testimony in detail and provided several valid reasons for finding his statements not fully credible. To begin, though plaintiff initially alleged an April 2020 disability onset date, he told his medical treater that he had been laid off that month due to the COVID-19 pandemic.[3] R. 26, 648. At the hearing, plaintiff admitted that he returned to full time construction work in October 2020 and so amended the onset date to February 20, 2021.[4] R. 47-48. Plaintiff then testified that he stopped working due to neuropathy pain, fatigue, and hand cramping, R. 49, yet as the ALJ noted, diabetic foot screens in December 2020, May 2021, and February 2022 were normal, and plaintiff did not start mentioning problems with his hands until July 2021. R. 24, 64, 1302, 1365, 1338. *See, e.g., Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies

---

[3] The medical appointment was in November 2020. R. 648. Plaintiff applied for benefits in April 2021. R. 229.

[4] In his brief, plaintiff claims that the work was only part time but ignores his contrary testimony at the hearing. Dkt. 13 at 9. Even if the work was part time, moreover, there was no error because the ALJ did not "improperly equate plaintiff's part-time work with an ability to perform full-time work." *Jonah D. v. Dudek*, No. 22 CV 6460, 2025 WL 947892, at *11 (N.D. Ill. Mar. 28, 2025).

10

between the objective evidence and self-reports may suggest symptom exaggeration.").

In addition, treatment notes from neurologist Dr. He indicated that plaintiff experienced "significant improvement" in his neuropathy symptoms, which were controlled with medication. R. 26, 578, 1246, 1260. Plaintiff disagrees, citing a March 16, 2021 emergency department ("ED") visit due to weakness, myalgias, and joint pain. Dkt. 13 at 10 (citing R. 381-84). But plaintiff ignores that at that time, he had been "[p]oorly compliant with his medications," had poor nutritional intake, and was drinking "a pint of vodka every single day." R. 23, 381. Similarly, though Dr. He told plaintiff in July and November 2021 that optimal blood sugar control is the only definitive treatment for diabetic peripheral neuropathy, in February 2022, plaintiff reported forgetting to take his insulin before his largest meal. R. 25-26, 703, 1297. Plaintiff needed to be reminded about better glucose control and also continued drinking alcohol against medical advice. R. 696, 1313, 1315, 1317. Even despite this, plaintiff's pain level was 0/10 in November 2021, 3/10 in February 2022 and 0/10 in May 2022. R. 25-26, 1278, 1301, 1309. *See Joshua L. v. Saul*, No. 20 CV 3213, 2021 WL 5179927, at \*9 (N.D. Ill. Nov. 8, 2021) ("failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure . . ."); SSR 16-3p ("if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record").

11

The ALJ also fairly discounted plaintiff's claimed need to lie down and take naps throughout the day. Plaintiff fails to point to evidence reflecting that he told his treating providers that he needed to lie down and rest, and no physician imposed such a restriction. *See Carol N. B. v. O'Malley*, No. 22 C 6921, 2024 WL 325328, at *8 (N.D. Ill. Jan. 29, 2024) ("A failure to substantiate a claim of needing to lie down or nap during the day with corroborating objective evidence is a valid reason to discount a claimant's statement"); *Imse v. Berryhill*, 752 F. Appx. 358, 360-62 (7th Cir. 2018) (ALJ properly disregarded claimant's hearing testimony of needing to lie down or nap 90 minutes to 4 hours a day 2 to 5 days a week, where "no physician, treating or otherwise, has ever indicated that there was a medical reason why she would need to lay down/nap as frequently as alleged during the day.").

Similarly unpersuasive is plaintiff's assertion that remand is warranted based on his testimony that he has good days and bad days and never improved as much as the ALJ found. Dkt. 13 at 11. The ALJ expressly noted plaintiff's reports of good and bad days, R. 25, and as the Seventh Circuit has made clear, "[w]hen [the plaintiff] criticizes the ALJ's analysis of h[is] daily functioning, h[is] good and bad days, and h[is] pain, []he is . . . inviting us to reweigh the evidence," which the Court will not do. *Grotts*, 27 F.4th at 1279. *See also Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) ("[E]ven if reasonable minds could differ on the ALJ's rejection of [plaintiff's] testimony, we will not reweigh evidence or substitute our judgment for the ALJ's."); *Rosemarie A. v. Dudek*, No. 22 C 4668, 2025 WL 1222652, at *12 (N.D.

12

Ill. Apr. 28, 2025) ("[T]he Court is not permitted to second guess the ALJ's conclusions or reweigh the evidence.").

It is well-established that an ALJ's credibility assessment "need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. April 10, 2014) (citing *Schreiber v. Colvin*, 519 F. Appx. 951, 961 (7th Cir. 2013)). Viewing the record as a whole, the ALJ's assessment of plaintiff's subjective statements was not patently wrong and his request to remand the case for further consideration of this issue is denied.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment [13] is denied, and the Commissioner's motion for summary judgment [16] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

                                                **Jeannice W. Appenteng**
                                                **United States Magistrate Judge**

Date: 6/23/2025